## Charles Ashmore v. The State.

No. 15505.   Delivered February 22, 1933.
Reported in 57 S. W. (2d) 834.

The opinion states the case.

*Adams & Hamilton,* of Jasper, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Theft of a hog is the offense; punishment, two years in the penitentiary.

The evidence for the state in brief was as follows:  The complaining witness, Mrs. Annie Robertson, owned hogs running on the open range.   On the 9th day of November, 1931, acting under a search warrant the sheriff of Newton county, together with several others, including Mrs. Robinson and her son, went to the appellant's place, and there Mrs. Robinson identified in the appellant's possession five head of hogs as belonging to her.   One hog in particular was referred to throughout the record as a "ground squirrel" hog which was around three or three and one-half years of age.   The state's evidence further showed that the ear markings of the hogs claimed by Mrs. Robinson had been mutilated and changed.   Mrs. Robinson testified that she had not seen this hog since the spring before along in the winter.   Her son testified that he had not seen it since the spring before.   The witness Arthur Robinson testified that Mrs. Robinson was his great aunt and he was ac-

quainted with part of Mrs. Robinson's hogs in that community; that one of the hogs in controversy was a ground squirrel colored hog with a white hip; that it ranged around the Bloodworth place for a while; that he was employed by the said Bloodworth and fed his hogs. During the time that he had observed the hogs around the Bloodworth place the hog that he had observed was marked with a crop in the right ear and an overslope and under bit in the left ear; that Mrs. Robinson gave that mark. He further testified that none of the other hogs of Mrs. Robinson ran with the Bloodworth hogs. He further testified that he had not seen the hog since he examined it about a year before at the Bloodworth place; that he did not know of his own knowledge whether the hog found in the pen of the appellant was the same hog or not; he had not seen it; that he did not know whether there was a ground squirrel colored hog in Bloodworth's bunch or not, but, if it was, he had not seen it.

Appellant admitted that he had taken up and penned the hogs and further testified that he purchased part of the hogs claimed by Mrs. Robinson from Mr. Pete Ellis and the said Ellis had delivered 10 hogs to him; that at that time they were in Mr. Ellis' mark, and at the time he purchased the hogs from Ellis, Ellis requested him to change the mark; that he brought them home and changed the mark and put them in his pen. This occurred about the 1st of October; that the little ground squirrel colored hog claimed by Mrs. Robinson was one of the Johnnie Bloodworth hogs. It was about three years old at the time Mrs. Robinson identified it as hers, and at the time this hog was claimed by Mrs. Robinson he had had it in his pen about two months, and he found it down near the Bloodworth place at the time he put it in his pen.

The witness Johnnie Bloodworth testified that he lived at Wiergate and had lived there about three years; before he went to Wiergate he lived at Weeks Chapel; about three months before he moved from Weeks Chapel to Wiergate he sold the appellant ten head of hogs. He sold him a black sow first, and at the time he moved he sold him the rest of his hogs, which was nine head, two sows, one of which was a red sow. Three of the hogs were a year old and four about four or five months old. All of the hogs were marked in his mark except the black sow, which was in the mark of one J. T. Hardy; at the time he sold the hogs they ranged in and around Weeks Chapel on Cow Creek. Of the younger hogs there was a red male and some black spotted ones in the bunch. They were different

colors but he did not pay much attention to the younger hogs.

When the case was called for trial, the appellant filed a first application for a continuance on account of the absence of his wife. The application showed that the appellant's wife was sick and not able to attend court at the time. In the motion for continuance, appellant stated that he expected to prove facts by his wife which we think were entirely relevant and material to his defense in this case. Among other things, the appellant showed to the court that he would prove by his wife that she was present at the time the appellant purchased the alleged stolen hog from F. P. Ellis and heard the conversation between the appellant and the said Ellis with reference to the changing of the marks on the hogs. It is further shown in said application that the said Ellis was dead. If the hog alleged to have been stolen belonged to Mrs. Robinson, it was certainly material to show that the appellant purchased the said hog in good faith from the person whom he believed to be the owner of it, and it would have aided appellant in his defense to show that he purchased the hog from one Ellis. So far as the record shows, the appellant had never before continued the case, and the motion so far as the record discloses was not contested. Touching the diligence, the motion for continuance shows that on March 14, 1932, appellant, through his attorneys, made written application to the district clerk of Newton county, Texas, for a subpoena for the witness Mrs. Julia Ashmore and on the 16th day of March, 1932, the district clerk of Newton county issued a subpoena for said witness, and placed it in the hands of the sheriff, and on said 16th day of March, 1932, the sheriff summoned the witness, and the case was called for trial on March 24, 1932, and the appellant's application for a continuance was presented on said date. The application for continuance conformed with the requirements of the statute in every essential detail and should have been granted. See section 355, Branch's Ann. P. C.; Merritt v. State, 2 Texas App., 177; Jarrott v. State, 96 Texas Crim. Rep., 239, 257 S. W., 256; Dixon v. State, 91 Texas Crim. Rep., 217, 238 S. W., 227. The motion for new trial also complains of the refusal of the trial court to grant appellant's first application for a continuance.

Another bill of exception complains of the refusal of the trial court to require the state to elect which hog was stolen, which was refused by the court. The bill shows that the appellant requested the court to require the state to elect while the witness Annie Robinson was testifying and objected to her

testimony until an election had been made. As stated in the case of Bradshaw v. State, 32 Texas Crim. Rep., 381: "When an election is to be had, the rule in this state is that the prosecution, and not the defendant, is authorized to make its election of the transaction upon which the state will rely for a conviction. He (the defendant) when authorized, may demand of the state an election, but this can not be done by objection urged to the evidence sought to be introduced." An objection to the introduction of testimony as to a separate transaction is not equivalent to a motion to require the state to elect. Branch's Ann. Penal Code, sec. 444.

Because the court erred in overruling appellant's first application for a continuance, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.